UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COLLABORATION PROPERTIES, INC., a Nevada Corporation,

    Plaintiff,

    v.

TANDBERG ASA, and TANDBERG, INC., a Delaware Corporation,

    Defendants.

No. C 05-01940 MHP

**MEMORANDUM & ORDER**
**Re: Motion for Summary Judgment**

Plaintiff Collaboration Properties, Inc. ("CPI") filed this action against defendants Tandberg ASA and Tandberg, Inc. (collectively, "Tandberg"), alleging infringement of U.S. Patent Nos. 5,867,654 (the "'654 patent"), 5,896,500 (the "'500 patent") and 6,212,547 (the "'547 patent"). The asserted patents relate generally to videoconferencing hardware and software. Now before the court is Tandberg's motion for summary judgment of invalidity under 35 U.S.C. section 112. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

Tandberg distributes and sells teleconferencing products, including videoconferencing hardware and software. CPI is a patent holding company; CPI is also the wholly owned subsidiary of Avistar Communications Corp., which competes with Tandberg. CPI owns the three patents at issue in this lawsuit.

The three asserted patents derive from the same original application, Ser. No. 131,523, filed October 1, 1993. The specifications for all three patents are identical in all relevant respects, unless otherwise noted. For convenience, the court will use column and line numbers from the specification of the '654 patent, hereinafter referred to as the "Specification" or "Spec.," for citations in this order.

The asserted patents cover, generally, a multimedia communication and collaboration system. The disclosed invention combines voice and video conferencing with the ability to exchange data and other media types between geographically dispersed locations. Users of the system interact with each other via "collaborative multimedia workstations," or CMWs, which facilitate the exchange of audio, video and data.

The patents contain system claims, which cover the system described in the Specification, as well as method claims corresponding to the system's use. Tandberg now moves for summary judgment that many of the asserted claims are invalid for indefiniteness under 35 U.S.C. section 112.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

DISCUSSION

Tandberg advances three distinct indefiniteness arguments, each of which applies to a different set of claims. First, Tandberg argues that certain method claims in the patent recite system elements. Tandberg refers to these as "System/Method" claims. Second, Tandberg argues that certain system claims in the patent recite method elements. Tandberg refers to these as "Method/System" claims. According to Tandberg, claims falling under the first two categories are indefinite under the Federal Circuit's recent holding in IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377 (Fed. Cir. 2005). Third, Tandberg argues that certain system claims are indefinite because they claim the way the system is used or the result of using the sytem, rather than the system itself. The court considers each argument in turn.

I.   System/Method Claims

Tandberg urges that certain of the method claims in the asserted patents are invalid because they recite both the features of a system and a method of using that system. According to Tandberg,

3

1  these claims improperly combine two statutory classes of inventions, and are invalid *per se* under
2  IPXL Holdings.
3        In IPXL Holdings, the Federal Circuit considered whether a dependent claim was indefinite
4  under section 112. The independent claim on which the dependent claim was based recited a
5  "system for executing financial transactions," including a processor, a display screen and a user
6  input mechanism. Id. at 1379. The challenged dependent claim recited

> the *system of claim 2* [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with the transaction type, and *the user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

Id. at 1384 (emphasis and insertion in original). The Federal Circuit found that the dependent claim attempted to claim both a system and a method for using that system, and was therefore invalid for indefiniteness under section 112. Id.. The court reasoned that

> it is unclear whether infringement of claim 25 occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction.

Id..

      Tandberg argues that claims such as claim 11 of the '500 patent are indistinguishable from the claim invalidated in IPXL Holdings. Claim 11 reads as follows:

> 11. A method of conducting a teleconference using a system including:
>     *a plurality of AV devices, each capable of*
>         *originating and reproducing*
>             *audio and video signals,*
>     *a plurality of communications ports each supporting*
>         *at least one of the group of switch connections consisting of*
>         *video in, video out, audio in and audio out; and*
>     *at least one communication path*
>         *arranged for transport of audio and video signals,*
>     the method comprising the steps of
>         (a) controlling communication connections
>             (i) between two of the AV devices,
>             (ii) over the communication path,
>     (b) by creating,
>             (i) as a result of a call request,
>             (ii) at least a first call handle,
>                 (1) associated with one of the two AV devices and, thereafter,

UNITED STATES DISTRICT COURT
For the Northern District of California

```
                    (iii) at least a second call handle
                            (1) associated with the other AV device,
                    (iv) each call handle defining,
                            (1) for its respective AV device,
                            (2) a call state being at least one of the group consisting of
                                active and hold states, and
                            (3) the port switch connections involved in the
                                communications connection.
```

'500 patent at 43:39–67 (emphasis added). According to Tandberg, the highlighted text improperly recites system elements within a method claim.

Tandberg's argument raises a very basic question about the proper drafting of method claims: can a claimed method be limited to performance on a particular type of apparatus? Both common sense and a cursory inspection of relevant authorities demonstrate that the answer is "yes."

Beginning with common sense, in order to be useful, a patented method must at a minimum be capable of being carried out in the physical world. Methods, ultimately, involve the use of and operate on physical objects. The statutory definition of a "process" is precisely in alignment with this common sense understanding: a process is defined as a "process, art or method, and includes a new use of a known process, *machine*, manufacture, composition of matter, or material." 35 U.S.C. § 100(b) (emphasis added). Thus a "process," as contemplated under the patent laws, expressly includes the use of a machine.

Indeed, the regime contemplated by Tandberg's argument—method claims divorced from any recitation of a specific apparatus or piece of machinery which can be used to carry out the method—has long been regarded as deeply problematic. In O'Reilly v. Morse, 56 U.S. (15 How.) 62 (1853), the famous "Telegraph Case," the Supreme Court rejected Samuel Morse's claim covering the use of electromagnetism for communication at a distance precisely because the claimed method strayed too far beyond the apparatus which Morse had actually invented. Morse claimed "the use of the motive power of the electric or galvanic current, which I call electro-magnetism, however developed for marking or printing intelligible characters, signs, or letters, at any distances." The Court ruled the claim to be invalid:

> But Professor Morse has not discovered, that the electric or galvanic current will always print at a distance, no matter what may be the form of the machinery or

5

> mechanical contrivances through which it passes. You may use electro-magnetism as a motive power, and yet not produce the described effect, that is, print at a distance intelligible marks or signs. To produce that effect, it must be combined with, and passed through, and operate upon, certain complicated and delicate machinery, adjusted and arranged upon philosophical principles, and prepared by the highest mechanical skill.

Id. at 117. As this passage makes plain, a method claim may be invalid for lack of enablement if it is divorced from devices known to one of ordinary skill in the art.

In Cochrane v. Deener, 94 U.S. (4 Otto) 780 (1876) the Supreme Court again considered the possibility of a process claim independent of particular physical devices:

> That a process may be patentable, irrespective of the particular form of the instrumentalities used, cannot be disputed. If one of the steps of a process be that a certain substance is to be reduced to a powder, it may not be at all material what instrument or machinery is used to effect that object, whether a hammer, a pestle and mortar, or a mill. *Either may be pointed out*; but if the patent is not confined to that particular tool or machine, the use of the others would be an infringement, the general process being the same.

Id. at 787–88 (emphasis added). As the emphasized language indicates, the salient point in Cochrane is that while a process claim may recite a particular device used to perform the process, it need not do so in all cases in order to be valid. Cochrane also makes clear that "instrument[s] or machinery" recited in a method claim may properly serve as claim limitations. If a method patent expressly recites the "instrument or machinery" used to carry out the method, then the claim will be limited to the performance of the method using that machinery. This understanding has remained unchanged to the present day. See, e.g., Diamond v. Diehr, 450 U.S. 175, 182–84 (1981) (quoting Cochrane); id. at 185 (upholding the validity of a method claim requiring the use of a "programmed digital computer.").

Courts have continued to struggle with the extent to which a method claim may be divorced from a specific physical context. The reluctance to allow patents on abstract methods provided a major stumbling block to the extension of patent protection to software and business methods. See In re Schraeder, 22 F.3d 290, 293–94 (Fed. Cir. 1994) (rejecting software method claims which failed to recite the data structures which were manipulated during the course of the claimed method). Only in recent years has the liberal standard for patentable subject matter governing software and

6

1  business method patents become clear. See State Street Bank & Trust Co. v. Signature Financial
2  Group, Inc., 149 F.3d 1368, 1373 (Fed. Cir. 1998), cert. denied, 525 U.S. 1093 (1999)
3  ("Unpatentable mathematical algorithms are identifiable by showing they are merely abstract ideas
4  constituting disembodied concepts or truths that are not 'useful.'  From a practical standpoint, this
5  means that to be patentable an algorithm must be applied in a 'useful' way."); AT&T Corp. v Excel
6  Communics., Inc., 172 F.3d 1352, 1357 (Fed. Cir.), cert. denied, 528 U.S. 946 (1999) (citing State
7  Street Bank).  The Supreme Court's reluctance to allow patents on abstract methods persists to the
8  current day.  See eBay Inc. v. MercExchange, L.L.C., 126 S.Ct. 1837, 1842 (2006) (Kennedy, J.,
9  concurring) (noting the "potential vagueness and suspect validity" of business method patents).

10     In light of these cases, which consider the outer limits of what constitutes a patentable
11 process, Tandberg's argument that section 112 precludes method claims from reciting system
12 elements is untenable.  There is no ambiguity inherent in claiming a method which involves the use
13 of specific physical objects; indeed, method claims reciting the use of particular devices are the rule
14 rather than the exception.  If an inventor claims "The method of driving a nail using a hammer" and
15 the accused infringer drives nails using a rock, there is no doubt that the accused infringer does not
16 literally infringe the claim.

17     IPXL Holdings says nothing to the contrary.  The claim at issue in IPXL Holdings was
18 problematic because it purported to be a system claim—one that could be infringed by manufacture
19 or sale, independent of any actual "use"—but contained an element that required user activity.  See
20 35 U.S.C. § 271(a).  Tandberg's argument relies on a false assumption about symmetry between
21 system and method claims; while there may be ambiguity in requiring that an action take place in the
22 context of an otherwise inert system claim, as discussed above there is no corresponding ambiguity
23 in requiring that the steps of a claimed method be performed using a particular device.  The system
24 limitations merely narrow the method claim's scope.

25     It is unambiguous from the disputed claim language in this case that one may possess "a
26 plurality of AV devices, each capable of originating and reproducing audio and video signals, a
27 plurality of communications ports each supporting at least one of the group of switch connections
28

7

1  consisting of video in, video out, audio in and audio out; and at least one communication path
2  arranged for transport of audio and video signals" without infringing claim 11.  In order to infringe
3  claim 11, one must not only possess such a system, but use it in the method recited in the claim.
4      The structure of the claim—first, reciting the system elements, then reciting the method
5  which makes use of that system—is also irrelevant, as is Tandberg's contention that the system
6  elements are part of the claim body rather than the preamble.  Each of the recited system elements
7  serves as the antecedent basis for terms used in the claimed method steps.  The fact that the drafter
8  chose to recite all of the system elements at the outset, rather than identifying them in the midst of
9  the claimed steps, has no effect on the claim's scope.
10      Tandberg's motion for summary judgment on the System/Method claims is therefore denied.

## II. Method/System Claims

Tandberg next argues that certain system claims are invalid because they contain method steps. Claim 1 of the '654 patent is representative:

> 1. A teleconferencing system for conducting a teleconference among a plurality of participants, comprising:
>
>    (a) a plurality of workstations, each workstation having first and second monitors and in communication with audio and video (AV) capture capabilities;
>
>    (b) a data path in communication with the plurality of workstations, over which data can be shared among the plurality of participants; and
>
>    (c) an AV path in communication with the plurality of workstations, along which AV signals, representing video images and spoken audio of the participants, can be carried;
>
> wherein, the system is *configured to* reproduce images, based on data signals shared along the data path, on at least two first monitors so as to permit participants associated with the workstations having the two first monitors to interactively share the reproduced images and reproduce participant video images, based on AV signals carried along the second path, on at least two second monitors.

'654 patent at 41:36–55 (emphasis added). According to Tandberg, the phrase beginning with "configured to" injects method steps into the purported system claim.

8

1    Tandberg's position is incorrect because the disputed claim language recites the functionality
2 of the claimed system rather than the act of using the system.  The problematic claim language in
3 IPXL Holdings required that "the user uses the input means" to perform certain functions—an act.
4 The language in the claims of the asserted patents, in contrast, requires that the system be
5 "configured to" perform certain functions when it is used—a statement of functionality.[2]
6    The independent claim at issue in IPXL Holdings is instructive.  Claim 1 of the patent
7 asserted in that lawsuit, which neither the District Court nor the Federal Circuit found to be invalid
8 for indefiniteness, reads as follows:

> An electronic financial transaction system for executing financial transactions, the transactions being characterized by a transaction type and a plurality of transaction parameters, the system comprising:
>     a central controller;
>     a communications network;
>     a terminal device selectively connectable to the central controller through the communications network, the terminal device comprising:
>         a processor;
>         a display connected to the processor;
>         an input mechanism for providing input to the processor;
> the system further comprising means for storing user defined transaction information, the transaction information comprising at least one of user defined transactions and user defined transaction parameters;
> the processor *causing the display to display* on a single screen stored transaction information;
> the input mechanism *enabling a user to use* the displayed transaction information to execute a financial transaction or to enter selections to specify one or more transaction parameters.

430 F.3d at 1379 (emphasis added).  The highlighted language, like the disputed claim language in
this case, recites the actions that the system is capable of taking—i.e., its functionality.

   In the seminal computer hardware and software case in the Federal Circuit, In re Alappat, 33
F.3d 1526 (Fed. Cir. 1994) (en banc), the court adopted precisely the same sort of "configured to"
language to describe the structure of electronic circuitry.  The claims at issue in In re Alappat were
drafted in means plus function form.  The Federal Circuit constructed a hypothetical claim, based on
the claim as drafted, including bracketed phrases, wherein "the subject matter in brackets
represent[s] the structure which Alappat discloses in his specification as corresponding to the
respective means language recited in the claims."  Id. at 1541.  For example, the court rewrote claim
element (a) as "[an arithmetic logic circuit *configured to* perform an absolute value function, or an

9

1  equivalent thereof] for determining the vertical distance between the endpoints of each of the vectors
2  in the data list." Id. The use of "system . . . configured to" in the claims at issue here is not different
3  in any material way from the use of the phrase "arithmetic logic circuit configured to" in In re
4  Alappat. In both cases, the claims recites a device or set of devices and the way in which the device
5  or devices are configured.

6  Both IPXL Holdings and Ex Parte Lyell, 17 U.S.P.Q.2d 1548 (Bd. Pat. App. & Interf. 1990)
7  stand for the narrow rule that a single claim may not purport to cover a system, independent of any
8  use of the system, and simultaneously purport to cover a particular use of the system. In other
9  words, such claims are indefinite because, according to the Federal Circuit, a potential infringer
10 cannot determine whether use is required for infringement, or merely possession of a system with
11 the capabilities for the claimed use.[3] This concern is inapplicable here where the claims require
12 capability, but not actual use.

13 Tandberg's reading of IPXL Holdings and Lyell is so sweeping that it would render invalid
14 nearly all of the claims at issue in all of the cases cited in this opinion, including the claims in IPXL
15 Holdings itself which were not found to be indefinite. The court seriously questions whether any
16 competent attorney could reasonably believe that Tandberg's legal position is correct. At oral
17 argument, Tandberg's attorney had difficulty answering basic questions about particular deficiencies
18 in Tandberg's position, and retreated repeatedly to the general assertion that claims combining
19 statutory classes of invention are invalid. Had Tandberg's attorney appeared any less earnest in
20 advancing his position, the court would be strongly inclined to request briefing on sanctions under
21 Federal Rule of Civil Procedure 11. The court notes, moreover, that certain of Tandberg's other
22 motions and arguments in this lawsuit—for example, the untimely motion to amend its answer and
23 counterclaims and the frivolous summary judgment motion on release—have approached the line of
24 sanctionable misconduct. Tandberg is advised to be more circumspect in its choice of arguments
25 going forward. This is not litigation for litigation's sake. It is not the job of lawyers to lay waste the
26 land and scorch the earth. There already are enough forces working at that. The job of lawyers and

10

1  litigation is to advance the case to a resolution on its merits. Meritless motions and discovery
2  practices will be met with zero tolerance and sanctions.

III. <u>Improper Recitation of Purpose</u>

Finally, Tandberg argues that the "configured to" elements of the asserted claims are improper because they recite the goal or use of the device, rather than the structure of the system. As discussed above, the "configured to" language indicates functionality, such as might be implemented in hardware or software. The structure of hardware and software is often described in functional terms; that fact does not render the claims invalid. <u>See</u> <u>In re Alappat</u>, 33 F.3d at 1541.

<u>CONCLUSION</u>

For the foregoing reasons, Tandberg's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: June 22, 2006

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# **ENDNOTES**

1. Unless otherwise noted, background facts are taken from plaintiff's complaint and from the patents at issue.

2. CPI also correctly points out that the claims asserted by Tandberg in a parallel lawsuit against Avistar are indistinguishable from the claims in CPI's patents in this lawsuit. Claim 1 of U.S. Patent No. 6,621,515 reads as follows:

> A video network for routing video calls, the video network comprising: one or more video endpoints; an array of infrastructure routing elements associated with the video endpoints, the infrastructure routing elements operable to transmit the video calls between the video endpoints along one or more routes; a video network platform in communication with the video endpoints and the infrastructure routing elements; and a scheduling engine associated with the video network platform and the infrastructure routing elements, the scheduling engine *operable to monitor the performance of the infrastructure routing elements, to determine a plurality of reliability models for the infrastructure routing elements, and to intelligently route video calls based on the reliability models*.

U.S. Patent No. 6,621,515 (emphasis added). Tandberg offers no cogent argument as to how the phrase "operable to" in Tandberg's claim, which it does not (and, presumably, will not) argue is indefinite, is different in meaning from the phrase "configured to" in the claims at issue in this lawsuit.

3. The court questions whether the ambiguity posited by the Federal Circuit actually exists. Regardless of whether the disputed claim in IPXL Holdings purported to be a "system" claim, it unambiguously required that a step be performed. Under the all-elements rule for infringement, the patentee could not plausibly argue that infringement was possible without the performance of the step. The Federal Circuit might instead have relied on 35 U.S.C. section 101, which requires that each claim cover one of a disjunctive list of classes of invention.