UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLABORATION PROPERTIES, INC., | No. C 05-01940 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER**<br>**Re: Defendants' Motion to Amend**<br>**Answer and Counterclaims** |
| TANDBERG ASA, and TANDBERG, INC., | |
| Defendants. | |

Plaintiff Collaboration Properties, Inc. ("CPI") filed this patent infringement action on May 11, 2005 against defendants Tandberg ASA and Tandberg, Inc. (collectively "Tandberg"). Tandberg filed its answer and counterclaim on July 15, 2005. Tandberg now moves to amend its answer and counterclaim to add the affirmative defenses of inequitable conduct and unclean hands, and to add a counterclaim for declaratory judgment of unenforceability. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

Plaintiff filed this action on May 11, 2005, asserting claims for infringement of U.S. Patent Nos. 5,867,654, 5,896,500 and 6,212,547. Defendants filed their original answers and counterclaims on July 15, 2005. The fact discovery cutoff was January 8, 2007.

Tandberg's proposed inequitable conduct defense is based on a series of statements and alleged omissions. Documentary evidence of many of the specific statements at issue has been available to Tandberg since early in the litigation. However, Tandberg asserts that it obtained sufficient corroborating evidence to support allegations of inequitable conduct only after deposing

1 Lester Ludwig, one of the inventors of the patents-in-suit, on September 29, 2006, Robert Ensor, an
2 inventor of one of the pieces of prior art, on November 11, 2006, and Keith Lantz in December
3 2006.

LEGAL STANDARD

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when justice so requires." Fed. R. Civ. Pro. 15(a). The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality"); Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997) (Jensen, J.) ("[T]he court must be very liberal in granting leave to amend"); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987) (describing a "strong policy permitting amendment").

Despite this liberal policy of amendment, leave will not be given where the district court has "a substantial reason to deny" the motion. J.W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15.14[1] (3d ed. 1998) ("[D]istrict judge[s] should freely grant leave to amend when justice requires, absent a substantial reason to deny."). The court may decline to grant leave where there is "any apparent or declared reason" for doing do. Foman v. Davis, 371 U.S. 178, 182 (1962); see also Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991).

The Ninth Circuit has interpreted Foman as identifying "four factors relevant to whether a motion for leave to amend pleadings should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981); see also Poling, 829 F.2d at 886. The enumerated factors are not of equal weight and delay alone is insufficient to deny leave to amend. Id. (citing Howey v. United States, 481 F.2d 1187 (9th Cir. 1973)). By the same token, "[p]rejudice to the opposing party is the most important factor." Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990). However, futility

2

alone can justify the denial of a motion to amend. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). The party opposing amendment bears the burden of showing why amendment should not be granted. See Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666 (Fed. Cir. 1986).

DISCUSSION

The four factors relevant to whether defendants' motions should be denied are "undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." Webb, 655 F.2d at 980. (9th Cir. 1981); see also Poling, 829 F.2d at 886. Delay alone is insufficient to deny leave to amend. Id. Futility alone can justify the denial of a motion to amend. Bonin, 59 F. 3d at 845. "Prejudice to the opposing party is the most important factor." Jackson, 902 F.2d at 1387. CPI does not assert that Tandberg seeks leave to amend in bad faith or with a dilatory motive. As the party opposing amendment, CPI bears the burden of showing that amendment should not be granted. Senza-Gel Corp., 803 F.2d at 666.

A.  Undue Delay

"Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson, 829 F.2d at 1388. CPI asserts that Tandberg has possessed nearly all of the evidence it now cites in support of its proposed inequitable conduct defense for more than a year, and that the information that Tandberg obtained from deposing Ludwig was available from Ludwig's deposition testimony from a prior case, which Tandberg received through discovery in November 2005. Despite the availability of this documentary evidence, it was reasonable—indeed, perhaps necessary—for Tandberg to wait until after obtaining corroborating deposition testimony before attempting to amend its answer. Tandberg would not have been able to plead inequitable conduct with sufficient specificity prior to obtaining witness testimony and without falling afoul of Federal Rule of Civil Procedure 11. See Advanced Cardiovascular Sys., 989 F. Supp. at 1247 (holding that party was entitled to confirm previously available factual allegations before amending its answer to include an inequitable

1  conduct defense); Optical Coating Lab., Inc. v. Applied Vision, Ltd., No. C-92-4689 MHP, 1995
2  WL 150513, at *4 (N.D. Cal. Mar. 20, 1995) (Patel, J.) (holding that pursuing an inequitable
3  conduct claim without a specific factual basis raised the specter of Rule 11 sanctions for having pled
4  the claim); Enzo Life Scis., Inc. v. Digene Corp., 270 F. Supp. 2d 484, 489 (D. Del. 2003) (holding
5  that party was "prudent and possibly required to confirm" factual allegations in discovery prior to
6  pleading an inequitable conduct claim).  In addition, Tandberg began the process of attempting to
7  amend its complaint in October 2006, and brought this motion only after failing to secure a
8  stipulation to its amended complaint.  In light of these factors the court does not find undue delay.

B. Futility of Amendment

A proposed amendment is futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).  "[F]utility includes the inevitability of a claim's defeat on summary judgment." California ex rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co., 358 F.3d 661, 673 (9th Cir. 2004).

CPI's opposition to Tandberg's motion relies principally on the futility factor.  CPI makes two types of arguments with respect to futility.  First, CPI argues that Tandberg has failed to plead inequitable conduct with the requisite specificity under Federal Rule of Civil Procedure 9(b).[1]  CPI raises this argument with respect to each of the statements and omissions upon which Tandberg relies in its amended pleading.  Second, with respect to certain of the statements, CPI claims that the facts Tandberg alleges cannot support an inequitable conduct claim as a matter of law.

Inequitable conduct consists of (1) affirmative misrepresentations of material fact, (2) submission of false material information, or (3) the failure to disclose known material information during the prosecution of a patent, coupled with the intent to deceive the PTO. Life Techs., Inc. v. Clontech Labs., Inc., 224 F.3d 1320, 1324 (Fed. Cir. 2000).  "Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence." Id.

Inequitable conduct is subject to the heightened pleading requirements of Rule 9(b).

4

Advanced Cardiovascular Sys., 989 F. Supp. at 1247. To plead an inequitable conduct claim, a party must set forth the content of the alleged misrepresentation or omission and indicate why or how the alleged misrepresentation or omission is material. Energy Absorption Sys., Inc. v. Roadway Safety Service, Inc., No. 93 C 2147, 1993 WL 389014, at *2 (N.D. Ill. Sept. 16, 1993). Omitted prior art is material if "there is a substantial likelihood that a reasonable Examiner would have considered the information important in deciding whether to allow the application to issue as a patent." Life Techs., 224 F.3d at 1325. The party must also specifically plead that the patentee acted with intent to deceive the PTO. Allegations that the patentee intentionally failed to cite a prior art reference or intended to disregard his or her duties to the PTO is not sufficient. Xilinx, Inc. v. Altera Corp., No. C 93-20709 RMW (EAI), 1994 WL 782236, at *2 (N.D. Cal. Feb. 8, 1994) (Whyte, J.).

In addition to these general requirements, special issues arise where inequitable conduct claims are raised with respect to continuation or divisional patents. A "breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." Fox Indus., Inc. v. Structural Preservation Sys., Inc., 922 F.2d 801, 804 (Fed. Cir. 1990). Two conditions must be met for inequitable conduct to "infect" a patent that issues from a continuation or divisional application. First, the applicant must have engaged in inequitable conduct with respect to the prosecution of an earlier related application in the chain leading to the challenged patent, and second, the inequitable conduct must relate to the asserted claims of that patent. Nilssen v. Osram Sylvania, Inc., 440 F. Supp. 2d 884, 900 (N.D. Ill. 2006). Conversely, claims that are separated from the inequitable conduct through a divisional application will not be unenforceable based on that inequitable conduct if "the issued claims have no relation to the omitted prior art." Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1332 (Fed. Cir. 1998). Similarity in subject matter or sharing a common application is insufficient, without more, to extend inequitable conduct to claims issued through divisional applications. Nilssen, 440 F. Supp. 2d at 900; Hoffman-La Roche, Inc. v. Promega Corp., 319 F. Supp. 2d 1011, 1021 (N.D. Cal. 2004) (Walker, J.). There must be a direct relation between the specific inequitable conduct and the claims at issue. Accordingly, courts have held that a party pleading inequitable conduct must plead facts that

sufficiently tie the purported inequitable conduct to each of the patents targeted by the defense. See, e.g., Sun Microsystems, Inc. v. Datram Corp., No. CIV. 96-20708 SW, 1997 WL 50272, at *4 (N.D. Cal. Feb. 4, 1997) (Williams, J.); Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc., No. CIV.A. 01-5627, 2002 WL 1565483, at *3 (E.D. Pa. July 16, 2002).

With respect to each alleged misrepresentation, therefore, Tandberg must specifically plead (1) intent to deceive, (2) materiality, and (3) the misrepresentation's relationship to the targeted patent or patents. CPI asserts that Tandberg has failed to meet the applicable pleading requirements with respect to each purported omission or misrepresentation. CPI also asserts that, with respect to certain of the statements and misrepresentations, Tandberg has failed to plead sufficient facts to avoid futility, i.e. that summary judgment is "inevitable" based on the facts alleged. The court will consider each statement in turn.

### 1. Intent to Deceive

As a general matter, Tandberg asserts that it is not required to specifically plead intent to deceive because inequitable conduct can be inferred from the "totality of the circumstances." While it is true that, with respect to inequitable conduct, "intent may be inferred from the surrounding circumstances," Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256 (Fed. Cir. 1997), there is a difference between what Tandberg must *show* to *prove* inequitable conduct and what Tandberg must *allege* to *plead* inequitable conduct. This distinction between evidence and pleading was recognized in Xilinx. There, the court held that the party's "eventual ability to prove [the applicant's] intent to deceive and [the party's] need to plead that intent in its answer, are two entirely different matters." Xilinx, 1994 WL 782236 at *3. The court went on to hold that, if the party "believes it can later prove that [the applicant] intended to deceive the PTO—whether through direct or circumstantial evidence—[the] pleading should, at the very least, reflect that belief." Id. Accordingly, while Tandberg's pleading sets forth "a pattern of omissions and fraudulent statements related to the Patents-in-Suit," and suggests possible motives for the applicants' intentional failure to disclose prior art, see Supp. Migrone Dec., Exh. E, Tandberg's

6

Proposed Amended Answer (hereinafter "PAA") at ¶¶ 28–29, Tandberg has not sufficiently pled an intent to deceive.[2]

    2. <u>Materiality and Relationship to the Patents-in-Suit</u>

        a. <u>Statement About Product Development</u>

Tandberg provides a detailed discussion of CPI's "Statement Describing Product Development," identifying numerous statements and omissions. Id. ¶¶30–41. Tandberg alleges that the development described in the statement "was material to the Patents-In-Suit since if such a product was commercialized or reduced to practice prior to October 1, 1992, the asserted claims would likely be invalid as anticipated or obvious pursuant to 35 U.S.C. sec. 102(b). Id. ¶ 33. Elsewhere, Tandberg claims that the statement falsely claims that the use was only experimental in order to exploit an exception to the on-sale bar, citing deposition testimony in support of the alleged falsity of the filed statement. Id. ¶ 40. Tandberg thus identifies specific statements and omissions with explicit discussions of materiality. This satisfies Rule 9(b) with respect to materiality.

Tandberg alleges that this statement was made in relation to the application filed on October 1, 1993, which ultimately issued as the '641 patent. Id. ¶¶ 20 & 30. Accordingly, Tandberg has sufficiently pled that this statement is directed toward the enforceability of the '641 patent.

        b. <u>Representations Related to the Ahuja Patents</u>

Tandberg's proposed amended complaint alleges that Ludwig submitted a false declaration to swear behind several patents issued to Ahuja et al. Id. ¶¶ 42–50. The only allegation related to materiality, however, is the contention that the technology disclosed in the Ahuja patents "was material prior art to the '654, '547 and '500 patents. Indeed, they are fully anticipatory." Id. ¶ 43. These conclusory statements do not meet the requirements of Rule 9(b).

        c. <u>Representations Related to Video Transmission Over UTP</u>[3]

7

Tandberg's proposed amended complaint alleges that the applicants failed to disclose prior art references related to TV quality video transmission over an unshielded twisted pair of wires ("UTP"), which Tandberg identifies as "as key limitation of the '547 Patent." Id. ¶ 51. Tandberg specifically identifies the references allegedly withheld by the applicants as NVT 408A and 518A. Id. ¶ 52. Tandberg also provides an excerpt from Dr. Ludwig's declaration to the PTO regarding this prior art, and cites evidence suggesting that this declaration contains statements that Ludwig knew were false. Id. ¶¶ 65–67. Tandberg also explicitly alleges that the PTO relied on these omissions and false representations, and that the PTO could not have issued the '547 patent if the prior art had been disclosed. Id. ¶¶ 51, 53, 58, 70. Finally, Tandberg specifically claims that the withheld prior art was developed more than a year before the application was filed. Id. 66 & 67. The allegations suffice to plead materiality.

Tandberg alleges that CPI failed to cite this prior art in the prosecution of the '547 patent, and the allegations regarding video transfer over UTP contain numerous references to the '547 patent and its application. Accordingly, Tandberg has sufficiently pled that this prior art is directed toward the enforceability of the '547 patent.

### d. Lightwave Systems, Inc. Prior Art

CPI asserts that Tandberg does not sufficiently set forth the materiality of the Lightwave Systems, Inc. prior art discussed at paragraphs 73–77. According to the complaint, the Lightwave prior art was a species of video transmission over UTP. The materiality of this technology generally is sufficiently pled as discussed *supra.* Tandberg's proposed amended complaint goes on to discuss Dr. Ludwig's specific knowledge of and familiarity with the Lightwave technology, and the specific information that he allegedly withheld from the PTO. Id. ¶¶73–77. Viewed in the context of Tandberg's statements with respect to video transmission over UTP generally, Tandberg has sufficiently pled the materiality of the allegedly withheld Lightwave technology, and that the Lightwave technology is related to the prosecution of the '547 patent.

####    e.   The Lantz and Ludwig Reports

Tandberg identifies numerous prior art references in the context of documents authored by Lantz and Ludwig. Id. ¶¶ 79–81. However, the only prior art reference that Tandberg discusses in any detail is the Tompkins patent owned by Datapoint, which is discussed in great detail. Id. ¶¶ 84–93. Tandberg alleges that this prior art reference is related to the '654 patent and withheld during its prosecution. Id. ¶ 84. None of the other numerous prior art references are discussed with any specificity whatsoever beyond being identified by name. Accordingly, while Tandberg has sufficiently pled materiality and connection to the '654 patent with respect to the Tompkins/Datapoint prior art, Tandberg has not pled sufficient facts related to the other prior art references in the Lantz and Ludwig reports.

####    f.   The Conference Proceedings

Tandberg's proposed amended answer alleges that CPI "buried" three relevant pieces of prior art among 1200 pages of irrelevant material related to two conference proceedings in an attempt to conceal the relevant articles from the PTO. Id. ¶¶ 94–101. Tandberg's only statements regarding the materiality of the three purportedly relevant articles are that they are "highly relevant pieces of prior art" and "highly material since they demonstrate that much of what Applicants were seeking to claim as inventive was in fact prior art and owned by Bellcore." Id. ¶¶ 97–98. These conclusory allegations do not satisfy the pleading requirements of Rule 9(b).

####    g.   H.320 Standard

Finally, Tandberg identifies the H.320 standard as prior art to the '500 patent. Id. ¶¶ 102–106. Tandberg's theory of materiality as set forth in its proposed amended pleading is that the H.320 standard "includes all the same features as" the H.323 standard with respect to the claims of the '500 patent, and that CPI's assertion that the H.323 standard infringes the '500 patent indicates that the H.320 standard anticipates the '500 patent. Id. Tandberg's allegations therefore import CPI's pre-existing allegations to a purportedly coterminous piece of prior art. This is a sufficient

9

1 allegation of materiality for the purposes of Rule 9(b), and Tandberg's pleadings explicitly tie the
2 H.320 standard to the '500 patent.

### 4. Facial Futility

In addition to its Rule 9(b) arguments, CPI alleges that certain of the statements and omissions discussed above could not give rise to an inequitable conduct claim, and that these allegations are therefore substantively futile in addition to improperly pled.

With respect to the video transmission over UTP and Lightwave technologies, CPI claims that these technologies were merely components of a claimed system and method, and that these "off-the-shelf" components cannot be invalidating prior art. Tandberg responds that its proposed amended answer alleges that Ludwig claimed to have invented video transmission over UTP by concealing the pre-existing video transmission technology in order to overcome a rejection by the patent examiner. Courts have held that, where a false affidavit is submitted to overcome a patent examiner's rejection, materiality is presumed. See, e.g., Senior Indus., Inc. v. Thomas & Betts Corp., No. 98 C 5842, 2002 WL 31180745, at *17 (N.D. Ill. Sep. 30, 2002). Without deciding the merits of this particular dispute, the court holds that CPI has not shown that summary judgment is "inevitable" with respect to these claims, and therefore has failed to demonstrate substantive facial futility.[4]

In addition, CPI claims that Tandberg cannot prove its claim arising from the conference materials because Tandberg acknowledges that much of the physical evidence no longer exists, and must rely on "information and belief" to make its allegations. The specific allegation at issue is: "The actual materials submitted to the Patent and Trademark office [sic] concerning these proceedings are no longer possessed by plaintiff and are not in the possession of the USPTO. On information and belief, however, Applicants submitted the entire proceeding—1200 pages." PAA ¶ 96. It is certainly troubling that Tandberg appears to lack any direct evidence of this allegation. However, inequitable conduct may be inferred from circumstantial evidence. Tandberg's claim arising from the conference materials is therefore not futile on these grounds.

### 5. Tandberg's Unclean Hands Defense

CPI additionally argues that Tandberg's unclean hands affirmative defense is not sufficiently pled. "To the extent that [a] defendant's affirmative defense for unclean hands . . . rests on allegations of inequitable conduct before the PTO, defendant must plead these defenses with the specificity required under Rule 9(b)." Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., No. C-95-3577 DLJ, 1996 WL 467293, at *13 (N.D. Cal. Jul, 24, 1996) (Jensen, J.). Tandberg's proposed amended answer states that "CPI is not entitled to the relief requested and may not proceed on its claims due to its unclean hands, as set forth in this amended answer and counterclaim." PAA ¶ 42. This is an incorporation of the allegations supporting Tandberg's inequitable conduct claim. Accordingly, the unclean hands defense will stand or fall with the inequitable conduct claim.

## D. Prejudice

Putting plaintiff "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery," may constitute undue prejudice. Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) (citation omitted). However, the need to re-open discovery is not fatal to a motion to amend where facts underlying the new claims come to light during discovery and the party seeking amendment plausibly accounts for the delay. Genentech, Inc. v. Abbot Labs., 127 F.R.D. 529, 531 (N.D. Cal. 1989) (Patel, J.).

CPI asserts that the prejudice arising from Tandberg's amended answer will be "severe." CPI claims that it will be forced to conduct extensive discovery related to third-party products and standards, which will be overly burdensome in light of the anticipated difficulty in tracking down the various third-party companies and witnesses. CPI further claims that several of these prior art devices have not been previously disclosed in Tandberg's prior filings or discovery, and therefore CPI has never had reason to investigate them.

In response, Tandberg denies that any additional discovery whatsoever is necessary for CPI to defend against Tandberg's inequitable conduct claim, as the inquiry focuses on the patentee rather than the third parties. Tandberg's argument in this regard is overly narrow. While the patentee's

11

1 state of mind is of crucial importance in the inequitable conduct inquiry, the court must also consider
2 the materiality of the alleged misrepresentations or omissions. The test for materiality is whether
3 "there is a substantial likelihood that a *reasonable Examiner* would have considered the information
4 important in deciding whether to allow the application to issue as a patent." Life Techs., 224 F.3d at
5 1325 (emphasis added). The materiality inquiry therefore focuses on the misrepresentation itself
6 rather than the patentee. See id. at 1324 ("Materiality and intent to deceive are distinct factual
7 inquiries, and each must be shown by clear and convincing evidence."). The need to conduct
8 discovery regarding third-party prior art is therefore relevant in considering the prejudice to CPI.
9 However, in light of the court's interest in resolving disputes on the merits and the additional
10 challenges involved in bringing an inequitable conduct claim, the court does not find that these
11 potential discovery obligations are sufficiently prejudicial to warrant denial of leave to amend.

12       The cases cited by CPI do not compel a contrary result. In Solomon v. N. Am. Life & Cas.
13 Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998), the court held that it was not an abuse of discretion
14 for the district court to deny leave to amend where the motion had been made "on the eve of the
15 discovery deadline" and "would have required re-opening discovery." In Western Shoshone Nat.
16 Council v. Molini, 951 F.2d 200, 204 (9th Cir. 1991), the court upheld a denial of leave to amend
17 where the amendment would have required "extensive additional discovery," there was no
18 justification for the delay in seeking amendment, and the opposing party was under a preliminary
19 injunction that would have had to remain in place during the extension of the litigation. In Ascon
20 Props., 866 F.2d at 1161, the court likewise held that denial of amendment was appropriate where
21 the amendment would create the need for additional litigation and discovery and the delay had been
22 caused by the party's carelessness in reading a statute. These cases are consistent with the
23 proposition that additional discovery does not mandate denial of leave to amend where the party
24 seeking amendment has justified the delay in bringing its motion. CPI has therefore failed to
25 demonstrate undue prejudice.

27     E.    <u>Summary</u>

12

CPI has not asserted bad faith or a dilatory motive, and has not shown undue delay or prejudice. However, CPI has identified numerous substantial pleading defects that would render Tandberg's amended pleading, as currently formulated, futile. CPI has not shown, however, that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller, 845 F.2d at 214. CPI has merely shown that, whatever facts may exist, Tandberg has not sufficiently pled them.

Although CPI has not shown undue delay and prejudice at this stage of the proceedings, the court is sensitive to the fact that a certain degree of delay and prejudice has nonetheless attached, and that providing Tandberg with additional time to draft a further amended pleading would exacerbate these existing difficulties. Accordingly, the court will grant Tandberg's motion for leave to amend only with respect to those allegations that are sufficiently pled with respect to materiality, and deny Tandberg any further amendments related to inequitable conduct.

In sum, Tandberg may proceed on its inequitable conduct claim based upon the following representations or omissions only:

(1) The statement about product development as it relates to the '641 patent.

(2) The representations regarding video transmission over UTP and Lightwave as they relate to the '547 patent.

(3) The representations in the Lantz and Ludwig reports with respect to the Tompkins/Datapoint prior art (but not the other prior art identified in the reports) as they relate to the '654 patent.

(4) The omission of the H.320 standard as it relates to the '500 patent.

Additionally, Tandberg may proceed with its unclean hands defense to the extent that it is based on these representations and omissions and the patents to which they are alleged to pertain.

In all other respects, Tandberg's motion for leave to amend is denied.

There also remains the issue of Tandberg's failure to sufficiently plead that the above alleged misrepresentations and omissions were made with the intent to deceive the PTO. Unlike materiality, this pleading defect can be easily corrected. Accordingly, Tandberg will be afforded an opportunity

13

to submit a further amended complaint only to the extent that it may add the required allegations that the applicants acted with intent to deceive the PTO. No other further amendments will be permitted. If Tandberg is unable to make such allegations with respect to any of these representations and omissions, the court will strike those defective bases for inequitable conduct.

CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Tandberg's motion for leave to amend, subject to the conditions set forth above. Tandberg is ordered to file *immediately* a proposed amended answer adding allegations of intent to deceive the PTO to the extent that Tandberg is able to do so.

IT IS SO ORDERED.

Dated:    January 25, 2007

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

### **ENDNOTES**

1. In addition to the specific particularity issues discussed below, CPI alleges generally that Tandberg's allegations "on information and belief" are inappropriate in light of the heightened pleading requirements of Rule 9(b). "Allegations based on 'information and belief' do not satisfy the particularity requirement of [Rule] 9(b) unless the complaint sets forth the facts on which the belief is founded." In re Worlds of Wonder Sec. Litig., 694 F. Supp. 1427, 1432–33 (N.D. Cal. 1988) (Conti, J.). In Tandberg's revised proposed amended answer, many of the instances of "on information and belief" have been removed based on recent discovery. In addition, Tandberg employs this phrase sparingly among detailed factual allegations supported by cited evidence. Tandberg's use of the phrase therefore does not render its proposed amended answer futile.

2. Tandberg does specifically allege that Ludwig made material, misleading statements to the PTO with intent to deceive with respect to Ludwig's declaration swearing behind the Ahuja patent. PAA ¶ 50. As this statement does not appear in Tandberg's original proposed amended answer, Tandberg appears to have added this statement in response to CPI's opposition brief. In any case, Tandberg has not made similar allegations with respect to the other bases for its inequitable conduct claim, and the court will not presume that Tandberg can do so.

3. Tandberg claims that CPI previously agreed not to oppose the addition of facts related to video transmission over UTP, and that the court should reject CPI's objections on those grounds. Tarndberg raises no legal argument (such as estoppel) in support of this claim and the court sees no reason to prevent CPI from changing its mind (assuming that Tandberg's characterization of CPI's previous statements is correct).

4. CPI also claims that the video transmission over UTP allegations are futile on two additional grounds. The firs, involves an allegation which CPI identifies as non-sensical and which Tandberg has acknowledged was made in error. Tandberg has corrected the allegation in its revised proposed amended answer, and Tandberg's revisions appear to address CPI's assertion. Second, CPI argues that Tandberg has not alleged that a declaration of conception before April 21, 1993 was false, and therefore such a declaration cannot be material. Tandberg has in fact made such an allegation. See PAA ¶¶ 45–50.